The People of the State of New York ex rel. New York League for the Separation of Church and State, a Corporation, and Joseph Lewis, Plaintiffs, *v.* John A. Lyons, as Commissioner of Correction of the State of New York, and Others, as Members of and Composing the Commission of Correction of the State of New York Defendants.

Supreme Court, Albany County, April 16, 1940.

*Joseph Wheless*, for the plaintiffs.

*John J. Bennett, Jr., Attorney-General [Henry Epstein, Solicitor-General*, of counsel], for the defendants.

Russell, J. Upon the return of a notice of motion the plaintiffs have moved this court for a final judgment on the pleadings herein under rule 112 of the Rules of Civil Practice. The defendants, pursuant to a notice of motion, have also moved this court under the same rule for a judgment dismissing the complaint herein. Since the answer sets at issue the conclusions which are alleged as invalid

purposes or acts, there are no issues of fact. The parties ask for judgment on the pleadings as to the issues of law.

The first cause of action alleges that the defendants, Commissioner of Correction of New York State and members of the Commission of Correction of the State, have violated certain provisions of the Constitution of the State of New York and the Correction Law of the State of New York, in permitting to be constructed upon State property at Clinton Prison a chapel or building to be known as the " Roman Catholic Church of St. Dismas, the Good Thief."

It appears that said church is being constructed by prison labor volunteered for that purpose and that the funds and materials are being supplied through gifts of Roman Catholic laymen and clergy. Second cause of action is similar to the first and relates to the construction of a chapel at Elmira State Reformatory as in violation of the Constitution. This chapel is already completed and is used for religious services and as a residence for the Catholic chaplain. It was constructed with prison labor and is on State property. The funds and materials were supplied by gifts to the defendants. The third cause of action alleges in substance that the statutes of the State are unconstitutional which permit the employment of chaplains at State correction institutions for the purpose of religious observances for inmates pursuant to the provisions of sections 9, 18 and 274 of the Correction Law. There is no allegation that any State funds are being or have been used for the construction of the said chapel.

The petitioners ask that the structures at Elmira State Reformatory and Clinton Prison be demolished and that said buildings be removed from the property of the State; for an order directing the cessation and discontinuance of the employment of convict labor in or upon said buildings; for the discontinuance of the employment and payment of said chaplains in said institutions and that said chaplains be ordered to vacate said premises as their residences.

The questions of law arising out of the allegations of the petitioners narrow down to one important question, namely: Is it unconstitutional for the State of New York to furnish facilities for religious worship and instruction to the inmates of State institutions where said institutions have been erected by gifts of funds or materials on State property? The plaintiffs contend that the erection of any chapel by prison labor on State property, even though a gift, is in violation of section 8 of article 7 of the State Constitution, which in substance forbids the use of State funds for anything but State purposes. The State contends that when erected on prison or reformatory property they become the property of the State and that they are used for State purposes in providing the prisoners with

adequate facilities for the free exercise of their religious belief and worship which is guaranteed to "all mankind" by section 3 of article 1 of the State Constitution and is in accord with legislative provisions pursuant to subdivision 2 of section 18 and section 610 of the Correction Law.

It is, therefore, mainly upon these sections that the conflict of opinion between the plaintiffs and the State arises. It might be well to state at this time the cause or source which permitted, in the discretion of the Commission of Correction and the Commissioner of Correction, the erection of these chapels. It appears in the brief on behalf of *amici curiæ* that in 1937 Clinton Prison was over-crowded. Many of the mental cases transferred to Dannemora State Hospital were caused by continuous idleness in confinement. The prison officials were helpless to provide jobs or courses in building trades. In order to meet this situation they decided " upon an educational and welfare project for the erection side by side of three buildings to be used as the Protestant, Hebrew and Catholic Churches." For this project the respective chaplains had to seek private resources for the cost of construction. The Catholic chaplain was the first to obtain the necessary resources for that project. It, therefore, cannot be said that the prison officials have discriminated in favor of any particular denomination.

It is conceded that when these chapels were or are erected they belonged to the State. Therefore, they may be used by the State for any purpose it sees fit. To what extent should the State then go in complying with section 3 of article 1 of the New York State Constitution, which reads as follows:

" Freedom of worship; religious liberty. § 3. The free exercise and enjoyment of religious profession and worship, without discrimination or preference, shall forever be allowed in this State to all mankind; and no person shall be rendered incompetent to be a witness on account of his opinions on matters of religious belief; but the liberty of conscience hereby secured shall not be so construed as to excuse acts of licentiousness, or justify practices inconsistent with the peace or safety of this State."

The prisoner is confined within the grounds of the prison. His civic liberty has been taken away. To deprive him because of such confinement of the right to worship would be to deprive him not only of the very right the Constitution of the State grants him, but also of one of the most essential factors in his rehabilitation. The very purpose of his imprisonment is not only to punish him for the crime he committed, but to prepare him vocationally, physically, mentally and spiritually for return to society. The prisoner does not need to worship if he so desires, but if he does, he should not be denied that privilege. This is the intent of the

Constitution. To many confined, the deprivation of spiritual solace would be greater than that of the other necessities which they receive. The relationship of religious faith to the very foundation of our government and the welfare of society should not be severed.

The courts have universally concurred in the doctrine that the stability of our government rests upon the basis of a religious belief in God. (*Holy Trinity Church* v. *United States*, 143 U. S. 457.)

The intent of the Constitution has been carried into effect by legislative enactments providing for inmates of various institutions of confinement, religious services, spiritual advice and spiritual ministration by some recognized clergyman of the denomination of the church which said inmates prefer. (Correction Law, § 610; State Const. art. 6, § 18.)

By allowing the inmates of its institutions the freedom of worship and supplying them with the adequate facilities for that purpose, the State is permitting the spirit of the Constitution to be fulfilled.

From the facts as appear in these pleadings I fail to see that the State is endeavoring to restrict the freedom of worship or foster the doctrines of any particular denomination. The fear of Catholicism or any other denomination gaining a foothold is dispelled by the motive underlying the permission to build and the concept for which the church is to be used.

It would be unreasonable to provide a place of worship and not a clergyman of their own faith to conduct the ceremony. (*Sargent* v. *Bd. of Education*, 177 N. Y. 317.) The Legislature has recognized this situation and provided for the payment of clergymen of different faiths. (Correction Law, § 18, subd. 2.)

It is unnecessary to state that the payment of a chaplain for the conduct of religious ceremonies in a prison or reformatory does not come within the meaning of either section 8 of article 7 or section 4 of article 11 of the Constitution, which prohibit the use of property or credit or any public money directly or indirectly in aid or maintenance of any school or institution of learning. Clinton Prison and the Elmira State Reformatory are certainly neither schools nor institutions of learning. (*Sargent* v. *Bd. of Education*, 177 N. Y. 317.)

I am, therefore, of the opinion that neither constitutional nor statutory provisions are violated by the building of the aforesaid churches on State property where such churches are not built by funds of the State. The permission to build by the State is in keeping with the freedom of worship as expressed in the Constitution.

The petition is, therefore, dismissed on the merits and judgment granted for the defendants in accordance with this memorandum.

Submit judgment.