Owen McGivern, J.
This litigation had its origin in an action brought by certain owners of real property and by certain tenants in a locale known as ‘ ‘ Lincoln Square ’ ’, in the city of New York, against the City of New York, Robert F. Wagner as Mayor of the City of New York, et al. The plaintiffs therein seek an injunction restraining the City of New York and the other defendants from acquiring the “ Lincoln Square ” area by condemnation or otherwise, from executing and carrying out the terms of a proposed sponsorship contract with Fordham University, from further processing the project with the Federal Urban Renewal Administration and from expending or committing any city funds in connection with the project.
The facts, which are not in dispute, reveal that the Lincoln Square Urban Renewal Plan contemplates the razing and *843 replanning of a slum area on the west side of Manhattan Island between 60th and 70th Streets, bounded by Broadway, Columbus Avenue, West End Avenue and Riverside Drive. The area is to be developed for the following uses: collegiate, multi-family residential, commercial, retail, public and semi-public uses. As an aid to the expedition of the project, Robert Moses as chairman of the committee on slum clearance of the City of New York, solicited and selected tentative sponsors for each of the areas involved. Fordham University was one of the sponsors selected to bid at public auction for the redevelopment of the collegiate site. By the terms of its sponsorship contract, Fordham bound itself to bid a minimum upset price at a public auction, upon the terms and conditions specified in the contract, and to redevelop the area in accordance with the renewal plan, if it became the successful bidder at the public auction.
After an order to show cause, wherein no stay was permitted, had brought on an application for a temporary injunction, and while this was still sub judice, the defendants moved for an order granting: 1. Judgment on the pleadings pursuant to section 476 of the Civil Practice Act and rule 112 of the Rules of Civil Practice, dismissing the complaint on the ground that it does not state facts sufficient to constitute a cause of action; or in the alternative; 2. Summary judgment pursuant to rule 113 of the Rules of Civil Practice dismissing the complaint. The plaintiffs simultaneously moved for summary judgment, conceding the absence of any genuine issue of fact.
Thus, there is alone here presented a narrow constitutional issue, testing whether or not a sectarian educational institution must be excluded from a neighborhood or a community which is being replanned and reconstructed as part of a slum clearance project directed by the Government and furthered by Government funds. This represents the controlling question of the controversy.
The plaintiffs contend that the proposed sponsorship by Fordham University of a portion of the redevelopment area would violate section 4 of article XI and section 7 of article I of the New York State Constitution and the First and Fourteenth Amendments to the Federal Constitution, in that such sponsorship would result in the giving of governmental “ aid or maintenance ” to a religious educational institution. The defendants contend that no such “ aid or maintenance ” is involved and that the transaction between Fordham and the City of New York, assuming it is consummated, is but a lawful contract involving an exchange of valuable considerations on both sides; the defendants further contend that if Fordham *844 were to be debarred by a court of law from consummating such a contractual arrangement, such an act would constitute a denial of the equal protection of the laws and visit upon Fordham an oppressive restriction upon the free exercise of religion, guaranteed to Fordham and all others, by the Federal and State Constitutions.
The court finds no force or validity in the plaintiffs’ position. The contention of “ aid or maintenance ” to a sectarian institution in contravention of constitutional prohibitions, is not available under the circumstances obtaining here. Fordham, and indeed the other prospective sponsors who may undertake to bid at public auction for the properties embraced within the redevelopment plan, are not and do not seek to be the recipients of governmental largesse. If successful at the auction, Fordham will have committed itself to pay a not inconsiderable sum of money (representing at least the full re-use value of the land as determined by appraisal), but in addition will also have: (a) undertaken to relocate the present occupants of the site, (b) demolish the structures presently there, (c) redevelop the land and construct new buildings thereon, upon meticulous terms and conditions prescribed by the Board of Estimate of the city and the Federal Urban Renewal Administration.
Thus, if the successful bidder at the auction of the proposed collegiate site, Fordham will merely exercise its corporate powers to contract, as may any other educational institution that cares to come forward at the time. Thus, there is no gift or subsidy contemplated, but a valid contract, to be sustained by substantial consideration moving to the city, and effecting an exchange of benefits to both parties on a quid pro quo basis. This arrangement precludes a holding that the proposed sponsorship plan, challenged by the plaintiff, will operate to confer ‘ ‘ aid ’ ’ upon Fordham. To hold, under the instant circumstances, that a denominational school may not be afforded the same opportunity to contract as any other private institution or corporation, would be to convert the constitutional safeguards into a sword against the freedoms which they were intended to shield.
And the proposed procedure, entailing the execution of a preauction sponsorship contract, not unusual in title I of the Housing Act of 1949 (U. S. Code, tit. 42, § 1451 et seq.) proceedings wherein the city has been a party, has been upheld by our Court of Appeals (Kaskel v. Impellitteri, 306 N. Y. 73, cert, denied 347 U. S. 934; Boro Hall Corp. v. Impellitteri, 128 N. Y. S. 2d 804, affd. 283 App. Div. 889, motion for leave to appeal denied 307 N. Y. 672; Bleecker Luncheonette v. Wagner, *845 141 N. Y. S. 2d 293, affd. 286 App. Div. 828, motion for leave to appeal denied 309 N. Y. 1029).
It is noteworthy that counsel for the plaintiff, on oral argument, conceded that there is no prohibition excluding Fordham per se from the suggested plan and procedure, assuming Fordham to be the successful bidder at the auction. In the view of this court, such a crucial concession leaves the plaintiffs ’ position without visible means of support. And in hard reality, to exclude Fordham, or any other sectarian institution, from great over-all community planning efforts, such as the Lincoln Square Project, would be to relegate such institutions to the “ other side of the tracks ”, in perpetuity. Nor has this been the practice. (See affidavit of Comm. Moses.) This pre-eminent authority demonstrates statistically that denominational institutions, such as churches and schools, have long been sought and regarded as integral parts of any well-planned community, and that participation in redevelopment programs by religious institutions is not extraordinary.
Implicit recognition of this fact has been accorded by the United States Supreme Court. In Berman v. Parker (348 U. S. 26), the court had before it a slum clearance project in the city of Washington undertaken pursuant to the District of Columbia Redevelopment Act of 1945 (60 U. S. Stat. 790). In upholding the Redevelopment Act, the court said (pp. 3Á-35): “ The entire area needed redesigning so that a balanced, integrated plan could be developed for the region, including not only new homes but also schools, churches, parks, streets, and shopping centers. In this way it was hoped that the cycle of decay of the area could be controlled and the birth of future slums prevented. * * * Such diversification in future use is plainly relevant to the maintenance of the desired housing standards and therefore within congressional power ” (emphasis supplied).
The intendment of such statutes is to throw an arm of protection around a whole community and to uplift it, not to ward off some units of the community because of accidental factors such as creed.
And assuredly, the integration of Fordham in such a vast development as Lincoln Square is not a step towards the establishment of a national religion, offensive to the First Amendment of the Federal Constitution. Public welfare legislation, such as the slum clearance law before us and the acts taken thereunder, which extend the general benefit of New York State law ‘' to all its citizens without regard to their religious belief ’ ’ are not to be considered as establishments of religion. (Ever- *846 son v. Board of Educ., 330 U. S. 1, 16.) Nor have our courts ever temporized with rejecting arguments that State action was aiding in the establishment of religion where concurrence would result in the encroachment upon the free exercise of religion. See, for example, People ex rel. New York League for Separation of Church and State v. Lyons (173 Misc. 821, 824), where the construction, with private funds, of churches in State prisons was sought to be enjoined. The court found that the “ permission to build by the State is in keeping with the freedom of worship as expressed in the Constitution ’ ’, referring to section 3 of article 1 of the State Constitution. So, in the case at bar, we have, not acts which aid in the establishment of a religion, but acts whose purpose is to prevent the restriction of freedom to worship. (See, also, Lewis v. Board of Educ. of City of N. Y., 157 Misc. 520, mod. on other grounds 247 App. Div. 106; People ex rel. Lewis v. Graves, 245 N. Y. 195; Matter of Lewis v. Mandeville, 201 Misc. 120.)
It has been well said that the coin of the First Amendment has two sides. Whenever it is contended that a certain State act is in aid of the establishment of religion, the obverse side of the coin must perforce be examined, lest, in the striking down of the proposed act, the right to freedom of religion be destroyed. As the Court of Appeals said in Matter of Zorach v. Clauson (303 N. Y. 161,172, affd. 343 U. S. 306)it must * * * be remembered that the First Amendment not only forbids laws ‘ respecting an establishment of religion ’ but also laws ' prohibiting the free exercise thereof ’. We must not destroy one iñ an effort to preserve the other ” (emphasis supplied).
It would unduly lengthen this opinion to quote extensively from Judge Froessel’s well-considered opinion in the Zorach case. Therein, however, he points out that the “ wall of separation ” between church and State “ is designed as a reasonable line of demarcation between friends ’ ’ and not an “ ‘ iron curtain ’ as between foes ”, and that instances abound which prove that not ‘ ‘ every friendly gesture between church and State shall be discountenanced” (pp. 171-172).
' In the instant case, it may well be that if Fordham does evolve as the successful purchaser of the collegiate site, such a transaction may prove to be a “ good deal ’ ’ for Fordham. But this fortuitous factor does not debar it. If the public good is enhanced it is only secondary that private interests may be benefited. (Matter of Murray v. La Guardia, 291 N. Y. 320; Loebner v. City of New York, 162 N. Y. S. 2d 233.)
The foregoing considerations and precedents impel the conclusion that the Lincoln Square Slum Clearance Plan cannot *847 arbitrarily exclude a denominational school from the area to be replanned (Matter of Community Synagogue v. Bates, 1 N Y 2d 445, 458). And further, no aid at all in the establishment of religion is here envisaged. The plan simply imports that Fordham and the city have achieved an accommodation of purposes resulting in a contract, to be consummated by a purchase at a public auction, and having as its end and aim the resuscitation of a blighted area and its rededication to a better and a more abundant community life.
The defendants’ motion for summary judgment is granted and the complaint is dismissed.